Defendants' hearing procedures and rendered the stipulation ineffective as a waiver of Plaintiff's Due Process rights.

> D. <u>Defendants Violated Plaintiff's Due Process Rights by Denying Her a Hearing Based on a Stipulation that was Not Translated for Her.</u>
>
> 1 <u>Defendants violated due process by failing to ensure that Plaintiff's waiver was knowing and proper.</u>

Ms. Paulino could not knowingly waive rights she did not understand. The stipulation offered to Plaintiff by Defendants is a two-page document, written in legalese, that includes an admission of charges, a waiver of her right to contest those charges and an agreement to pay a $400 fine. It is written in English, a language she neither reads nor speaks. Defendants, despite their knowledge that Plaintiff does not speak or read English, provided no procedures to help Ms. Paulino understand the nature of the document she was signing. Because of her limited English proficiency and the lack of translation and interpretation services, Ms. Paulino did not comprehend the nature of the document that was presented to her. She did not intend to waive her right to a hearing or to accept the charges as true. ( Complaint at ¶ 36.)

In a case of striking similarity, <u>Francisco v. Barnhart</u>, 2003 WL 548870 (S.D.N.Y. 2003), a Spanish-speaking limited English proficient Social Security claimant sought review of a denial of supplemental social security disability benefits ("SSI") by the Social Security Administration. The claimant in <u>Francisco</u> requested a hearing before an ALJ but checked a box on an English form that stated that she did not wish to appear in person for the hearing. She subsequently received a letter, solely in English, acknowledging her waiver of appearance at the hearing. Her representative was sent a contradictory letter explaining the hearing process and stating that a Notice of Hearing would be mailed to

14

him and to the claimant. The court, in examining whether the claimant's alleged waiver of her right to appear at a hearing was knowing and voluntary, considered the fact that the claimant was not proficient in English, as well as the contradictory letters regarding the hearing process sent to the claimant and to her representative. The court held that the claimant's waiver of her right to a hearing was not knowing and voluntary. "Plaintiff cannot read, speak or write English. It would be difficult for plaintiff to knowingly waive rights she did not understand." Id., 2003 WL 548870 at 3. The court stated that the SSA can make a waiver knowing and voluntary by "providing a thorough explanation of the hearing process to the claimant." Id.

Like the Plaintiff in Francisco, Ms. Paulino is also a Spanish-speaking limited English proficient adult. The government agencies in both cases sent these Spanish-speaking individuals documents in English waiving constitutional rights without any explanation of their contents. In the present case Ms. Paulino was encouraged to sign the document by Defendant DOHMH, who failed to interpret the document or explain its contents in any way.

Numerous courts have addressed the issue of language barriers with regard to waivers of constitutional rights, but most frequently when addressing the validity of guilty pleas and Miranda waivers. See, e.g., United States v. Hernandez, 913 F.2d 1506 (10th Cir. 1990); People v. Rivera, 125 Misc. 2d 516, 480 N.Y.S.2d 426 (Sup. Ct. N.Y. Co. 1984); United States v. Robles-Ramirez, 93 F. Supp. 2d 762 (W.D.Tex. 2000); People v. Mejia-Mendoza, 965 P.2d 777 (Colo. 1998).

In Rivera, for example, a New York criminal court found the defendant's guilty pleas to be unconstitutional because the defendant was severely hearing and speech-

15

impaired and was not given access to a sign-language interpreter. 125 Misc.2d 516, 480 N.Y.S.2d 426. Because the defendant was not able to communicate with the court in the absence of an interpreter, he could not have been sufficiently informed of his rights to make a proper waiver, and the plea agreement was not voluntary and knowing and therefore had been secured in violation of the U.S. Constitution. Id.

In Robles-Ramirez, the court held that a Spanish-speaking defendant's alleged waiver of his Miranda rights was not knowing or intelligent because he was unable to read in Spanish or English and was notified of his rights in writing in English, without oral interpretation. 93 F. Supp. 2d 762. "Simply put, this signature did not constitute a knowing or intelligent waiver because, having not read or been read his rights, the defendant did not know what he was waiving. It is further found that the defendant likely did not even realize that his signature was an act of waiver at all." Id. at 766.

In Mejia-Mendoza, the Supreme Court of Colorado held that a Spanish-speaking defendant did not knowingly and intelligently waive his rights under Miranda when he was given inadequate interpretation of his rights. 965 P.2d 777 (1998). "To determine if a voluntary, knowing, and intelligent waiver occurred courts examine the totality of the circumstances . . . including any language barriers encountered by a defendant." Id. at 780. See also United States v. Heredia-Fernandez, 756 F.2d 1412, 1415 (9th Cir. 1985); United States v. Gonzales, 749 F.2d 1329, 1335-36 (9th Cir. 1984) (examining defendant's language abilities in discussion of effective waiver); United States v. Martinez, 588 F.2d 1227, 1235 (9th Cir. 1978) (assuming "that if Miranda warnings are given in a language which the person being so instructed does not understand, a waiver of those rights would not be valid").

16

The stipulation sent to Ms. Paulino by Defendant OCFS closely resembles a guilty plea, since it seeks an admission of charges, an agreement to pay civil penalties, and waiver of the opportunity to contest those charges at an administrative hearing; further, Plaintiff's admission of charges will constitute a long term, if not permanent, stain on her record and potential barrier to her ability to work in the child care field. The Supreme Court's test for the validity of a guilty plea is whether the plea "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Parke v Raley, 506 U.S. 20, 29 (1992). The Court considers "the totality of all the surrounding circumstances-both the characteristics of the accused and the details of the interrogation." Schnecklothe v. Bustamonte, 412 U.S. 218, (1973). In applying this test, courts will examine any language barriers faced by the defendant. See United States v. Hernandez, 913 F.2d 1506 (10th Cir. 1990); United States v. Boon San Chong, 829 F.2d 1572 (11th Cir. 1987); Perri v. Director, Department of Corrections, State of Illinois, 817 F.2d 448 (7th Cir. 1987); United States v. Bernard S., 795 F.2d 749 (9th Cir. 1986); United States v. Short, 790 F.2d 464 (6th Cir. 1986). Because it is clear that a language barrier prevented Ms. Paulino from waiving her rights knowingly and intelligently, the alleged waiver was obtained in violation of Due Process.

    2    <u>The sufficiency of Plaintiff's waiver must be evaluated with reference to the strong federal policy stating that denial of language access is discriminatory.</u>

Defendants correctly observe that Plaintiff is barred from enforcing the disparate impact regulations promulgated under § 602 of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, due to the Supreme Court's holding in Alexander v. Sandoval, 532

17

U.S. 275 (2001).[1] In <u>Sandoval</u>, the Supreme Court held that a private right of action exists only to enforce § 601 of Title VI, which solely prohibits intentional discrimination. <u>Sandoval</u>, 532 U.S. 275, 280. However, the Court clearly proclaimed that, "regulations promulgated under § 602 of Title VI may validly proscribe activities that have a disparate impact . . . even though such activities are permissible under § 601." <u>Sandoval</u>, 532 U.S. 275, 281. Defendant OCFS is wrong to imply that Title VI is irrelevant to this Court in deciding whether Plaintiff's alleged waiver violated Due Process. To the contrary, Title VI, Executive Order 13166 and the variety of regulations and guidances promulgated under it to prohibit national origin discrimination clearly set out a federal mandate for federally-funded entities to take affirmative measures to provide language access to their programs and services. In assessing the validity of Plaintiff's purported waiver of her rights, the Court should bear in mind the unlawfulness of Defendants' conduct under these laws and regulations.

DOHMH and OCFS are both entities that receive federal funding from the U.S. Department of Health and Human Services. (Complaint at ¶ 40.) Entities that receive federal funds are prohibited from denying meaningful access to their services on the basis of national origin under Title VI of the Civil Rights Act of 1964. In 2000, President Clinton issued Executive Order 13166, "Improving Access to Services for Persons with Limited English Proficiency," which clarifies the prohibition on national origin discrimination under Title VI. Exec. Order No. 13166, 65 Fed. Reg. 50121, (Aug. 11, 2000). Executive Order 13166 directs all federal agencies to issue their own policy

---

[1] Defendant OCFS, however, wrongly asserts that <u>Sandoval</u> overturned <u>Lau v. Nichols,</u> 414 U.S. 563 (1974), in which the Supreme Court interpreted Title VI national origin discrimination to include the denial of access to federally funded programs for persons with limited English proficiency. (Def. OCFS Mem. P. 5).

18

guidance directing recipients of their federal funds to comply with Title VI obligations to provide access to limited English proficient individuals. The Executive Order states that the Department of Justice general guidance document, issued on the same day, set forth:

> the compliance standards that recipients must follow to ensure that the programs and activities they normally provide in English are accessible to LEP persons and thus do not discriminate on the basis of national origin in violation of title VI of the Civil Rights Act of 1964, as amended, and its implementing regulations. As described in the LEP guidance, recipients must take reasonable steps to ensure meaningful access to their programs and activities by LEP persons.

Exec. Order No. 13166, 65 Fed. Reg. at 50121.

Department of Health and Human Services ("DHHS") regulations promulgated under § 602 prohibit recipients of DHHS funds from "utiliz[ing] criteria or methods of administration which have the effect of subjecting individuals to discrimination because of their race, color, or national origin, or have the effect of defeating or substantially impairing accomplishment of the objectives of the program with respect to individuals of a particular race, color, or national origin." 45 CFR 80.3(b)(2).

The DHHS "Guidance to Federal Financial Assistance Recipients Regarding Title VI Prohibition Against National Origin Discrimination Affecting Limited English Proficient Persons," published on August 8, 2003, further clarifies the Title VI prohibition on conduct that has a disparate impact on limited English proficient persons.

> [B]ecause Sandoval did not invalidate any Title VI regulations that proscribe conduct that has a disparate impact on covered groups--the types of regulations that form the legal basis for the part of Executive Order 13166 that applies to federally assisted programs and activities--the Executive Order remains in force.

68 Fed Reg. 47311, 47312 (August 8, 2003).

19

Under the regulations and guidance, there is little doubt that Defendants were obligated to provide for the translation or interpretation of a document that purported to waive the Constitutional rights of a limited English proficient individual.

### 3  Defendants' arguments rely exclusively on an inapposite line of cases regarding the limits of the due process right to notice and disregard the clear standard for waiver of constitutional rights.

The Defendants consistently mischaracterize the nature of the Due Process right at stake in this case. The Due Process issue here rests not on the right to notice in one's own language but rather on the guarantee that the waiver of a constitutional right be knowing, voluntary and intelligent as required by the U.S. Constitution. D.H. Overmyer Co. Inc. of Ohio v. Frick Co., 405 U.S. 174 (1972). Both of the Defendants rely exclusively on an inapposite line of cases regarding the limits of the Due Process right to notice in one's primary language. (Memorandum of Law in Support of State Defendant's Motion for Judgment on the Pleadings ["Def. OCFS Mem."] at 5-6; City Defendant's Memorandum of Law in Support of Its FRCP Rule 12(c) Motion ["Def. DOHMH Mem."] at 10-12.) None of the cases cited by either Defendant addresses the standard for waiver of a constitutional right. Since Ms. Paulino never received a Notice of Hearing, our case clearly is not about the language requirements for that notice but about the improper waiver of her constitutional rights.

Defendant DOHMH argues that "[t]here is no authority to support the claim that a government entity violates an individual's right to due process by communicating with the individual in a language other than English." (Def. DOHMH Mem. at 11.) This claim is simply false. As discussed above at Point II, Sec. A, the Due Process Clause requires the waiver of a constitutional right to be knowing, voluntary and intelligent, a standard

20

that often requires the provision of translation and interpretation services for individuals with limited English proficiency. See, e.g., United States v. Hernandez, 913 F.2d 1506 (10th Cir. 1990) (examining language barrier to determine whether Miranda waiver was made knowingly); see also United States v. Boon San Chong, 829 F.2d 1572 (11th Cir. 1987); Perri v. Director, Department of Corrections, State of Illinois, 817 F.2d 448 (7th Cir. 1987). The supporting cases cited by DOHMH all narrowly address the translation of notices and forms, not the waiver of constitutional rights. (See Def. DOHMH Mem. at 11.)

In Soberal v. Heckler, 717 F.2d 36 (2d Cir. 1983), relied upon by Defendants, the Second Circuit held that limited English proficient Social Security benefits claimants were not entitled to notices denying their benefit claims in Spanish. The plaintiffs in that case argued that their Due Process right to notice was violated by the SSA's failure to provide notices and information in Spanish. Id. at 43. The court, in analyzing their claim, discussed the Due Process requirements for notice and ultimately held that, "[a] rule placing the burden of diligence and further inquiry on the part of a non-English speaking individual served . . . with a notice in English does not violate any principle of due process." Id. at 44. However, the court goes on to proclaim, "[w]hether due process would ever, under any circumstances, mandate particular documents or particular services in a language other than English is a question not before us." Id. (emphasis added).

The notices in Soberal are distinguishable from the stipulation received by Ms. Paulino. The notices in question in Soberal informed the claimants that their benefits had been denied by the SSA. The claimants in Soberal argued that their inability to

21

understand the notices prevented them from appealing the decisions and requesting hearings, thus it was their inaction that led to these consequences. Ms. Paulino, however, was induced by the government to sign a stipulation waiving her constitutional rights. In such a situation, the government has a heightened burden to ensure that such a waiver be knowing and voluntary. Doe v. Marsh, 105 F.3d 106 (2d Cir. 1997). The plaintiffs in Soberal were also each ultimately afforded a full evidentiary hearing and an interpreter at that hearing, further distinguishing them from Ms. Paulino, who remains deprived of her constitutional rights.

Both Defendants also cite Vialez v. NYC Housing Authority, 783 F.Supp. 109 (S.D.N.Y 1991), to support their claims that the Constitution does not require the government to take into account a person's language in determining what process is due. In Vialez, a limited English proficient tenant argued that her receipt of notices in English from the New York City Housing Authority (NYCHA) violated her Due Process rights.[2] Vialez, however, addressed the Due Process right to receive notices in a language other than English, whereas the present case concerns the issue of whether a waiver of a constitutional right made in a language that one does not understand can be deemed knowing and therefore proper. In Francisco v. Barnhart, 2003 WL 548870, as previously discussed, the court acknowledged that language barriers are a factor to be considered in determining whether a waiver of constitutional rights is knowing. Id. at 3. See also United States v. Hernandez, 913 F.2d 1506 (10th Cir. 1990); United States v. Boon San Chong, 829 F.2d 1572 (11th Cir. 1987); Perri v. Director, Department of Corrections, State of Illinois, 817 F.2d 448 (7th Cir. 1987). It is important to note that the majority of the cases cited by both Defendants to support their claim that there is no due process right

---

[2] In Vialez, as in Soberal, the plaintiff ultimately attended her hearing with an interpreter present.

22

to notice in one's primary language, particularly <u>Soberal</u> and <u>Vialez</u>, predate both Executive Order 13166 and the federal agency guidances issued thereafter.

In mischaracterizing the issue in this case, both Defendants argue that an English language notice places a burden of due diligence on a limited English proficient individual to obtain assistance in understanding the notice. (Def. DOHMH Mem. at 11; OCFS Def. Mem at 5-6.) The stipulation in question clearly waives constitutional rights and therefore must be analyzed under the standard for waiver. <u>D.H. Overmyer Co. Inc. of Ohio v. Frick Co.</u>, 405 U.S. 174 (1972). However, even if this Court applies the Due Process standard for notice described in <u>Soberal</u>, Ms. Paulino meets any due diligence burden required of her. (Complaint at ¶ 35.)

Defendant OCFS incorrectly states that Ms. Paulino did not request an explanation or translation from Ms. Batts or another person after receiving the stipulation. (Def. OCFS Mem. at 6.) However, Ms. Paulino contacted Ms. Batts for precisely that purpose. "As Ms Paulino was unable to read or understand the documents she received, she sought assistance from DOHMH to respond to these documents by calling them on the telephone." (Compliant at ¶ 35.) When Ms. Paulino spoke with Ms. Batts, as alleged in the Complaint, Ms. Batts did not tell her about the nature of the stipulation, the contents of the stipulation, or the consequences of signing it. Ms. Batts simply advised Ms. Paulino to sign the document and to pay a fine. ( Complaint at ¶35.) Defendant OCFS then contradicts itself, and claims that this phone call constitutes an admission that Ms. Paulino used "the interpretation services of . . . defendant's bilingual staff (Ms. Batts.)" (Def OCFS Mem. at 7.) However, Ms. Paulino did not receive interpretation services from Ms. Batts. (See Complaint ¶ 35). While the aforementioned conversation

23

was conducted in Spanish, Ms. Batts did not interpret or explain the contents of the stipulation, she simply told Ms. Paulino to sign the document and pay the fine. Id. While Soberal may allow the government to place a burden of further inquiry on a limited English proficient individual who receives a notice in English, it does not hold that when the government responds to such a request for assistance, it bears no responsibility for misleading that individual to waive rights without informing her of the existence or consequences of such a waiver.

### III. CITY DEFENDANT ACTED JOINTLY WITH THE STATE DEFENDANT IN DEPRIVING MS. PAULINO OF HER DUE PROCESS RIGHTS

City Defendant DOHMH acknowledges that it has a contract with New York State[3], that it issues and renews family day care provider registrations to applicants who present the documentation required by the State Defendant, as set forth in Section 417.2 of Title 18 of the NYCRR, and that it "inspects and monitors such providers." DOHMH Memo. at 3. Although City Defendant states that "formal enforcement action is performed by the State Defendant, not the City," State regulations provide that "enforcement actions which may be undertaken by the Office include, but are not limited to: meetings or telephone conversations between a provider and the Office to discuss corrective action plans." 18 NYCRR § 413.3(a)(2). In New York City, it is DOHMH, on behalf of the State, that engages in such meetings and telephone conversations.

DOHMH therefore cannot deny that it plays a substantial role in carrying out the States function of licensing and monitoring home based day care providers in New York City and ensuring compliance with the State's rules and requirements.

---

[3] The City has not attached a copy of this contract as an exhibit and has not yet produced a copy in response to plaintiff's discovery requests.

24

Andrea Batts, in responding to Plaintiff's diligent inquiry and failing to apprise her of her right to contest the Statement of Charges, was clearly acting under color of state law in her capacity as head of the City Defendant's Manhattan Day Care Bureau.

IV. FEDERAL COURT IS THE PROPER VENUE FOR PLAINTIFF'S ACTION TO ENFORCE A FEDERAL CONSTITUTIONAL RIGHT

State Defendant's contention that Plaintiff's Complaint should be characterized as a state law claim requiring the filing of an Article 78 proceeding is incorrect. Plaintiff has alleged sufficient facts to establish that both the State and City Defendants procured an improper waiver of her Due Process rights to adequate notice and a hearing. The waiver of a federally guaranteed constitutional right is a federal question, controlled by federal law. Morris v. NYCERS, 129 F. Supp. 2d 599, 605-06 (S.D.N.Y. 2001); Legal Aid Society v. City of New York, 114 F. Supp. 2d 204, 226 (S.D.N.Y. 2000).

The cases cited by the State Defendant are not to the contrary. In Marino v. Ameruso, 837 F.2d 45 (2d Cir. 1988), the only alleged due process violation was an erroneous evidentiary ruling by an ALJ at the administrative hearing held which resulted in an unfavorable result to the plaintiff. In dismissing the case, the court "distinguished between a claim that an established state procedure does not afford procedural due process and a claim that a property right was lost because of a random and unauthorized act by a state actor." Marino, 837 F.2d at 47. Here, Plaintiff has alleged procedures by the Defendants that resulted in an improper waiver of her federal Due Process rights.

State Defendant's reliance on New York State National Organization For Women v. Pataki, 261 F.3d 156 (2d Cir. 2001), cert. denied 534 U.S. 1128 (2002) is misplaced, as the only issue in that case was alleged protracted delays in processing discrimination

complaints by the New York State Division of Human Rights. The court found that the claimants could have used Article 78 proceedings to mandamus Division officials to expeditiously resolve the claims. The court distinguished the availability of Article 78 procedures, which could be invoked before actual prejudice arose, and a § 1983 damage claim, which arises after actual prejudice has occurred. Pataki, 261 F.3d at 168.

Similarly, in Cartagena v. City of New York, 257 F. Supp. 2d 708 (S.D.N.Y. 2003), relied on by the State Defendant for the proposition that New York's federal courts "have consistently declined to exercise supplemental jurisdiction over Article 78 claims," see OCFS Memo. at 12, the court went on to hold that

> My ruling, however, does not prohibit Cartagena from attacking the Pension Fund's decision in the Court to the extent she has a basis independent of her Article 78 claim for doing so. For example, if she wishes to attack the Pension Fund decision under § 1983 on the basis that it violates her constitutional right to equal protection, I would have jurisdiction over that claim and I would be inclined to allow her to amend her amended complaint to add that claim.

Cartagena, 257 F. Supp. 2d at 711. See also Campo v. New York Employees' Retirement System, 843 F.2d 96 (2d Cir.), cert. denied, 488 U.S. 889 (1988) ("Mrs. Campo has asserted only one claim under federal law, i.e., denial of procedural due process pursuant to the Fourteenth Amendment. Mrs. Campo has not been required first to present and to exhaust that contention in a state court. Rather it has been entertained and decided against her - in this federal case . . ."). Accordingly, the State Defendant's contention that the proper venue for Plaintiff's claims was an Article 78 proceeding is not supported by the relevant case law and should be rejected.

26

## V. THE COURT SHOULD NOT STAY DISCOVERY PENDING THE DETERMINATION OF DEFENDANTS' MOTIONS

There is no automatic stay of discovery pending the determination of a motion to dismiss, and the party seeking a stay of discovery bears the burden of showing good cause. See Osan Limited v. Accenture LLP, 2006 WL 1662612 (E.D.N.Y. 2006). To establish "good cause," the movant is required to make "a particularized showing of facts militating in favor of the stay." Complaint of Akropan Shipping Corp., 1990 WL 16097 (S.D.N.Y. 1990). In determining whether a stay of discovery is warranted, courts generally consider the following factors: "(1) whether the defendant has made a strong showing that the plaintiff's claim is unmeritorious; (2) the breadth of discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay." Port Dock and Stone Corp. v. Oldcaster Northeast, Inc., 2006 WL 897996 (E.D.N.Y. 2006), citing, In re Currency Conversion Fee Antitrust Litigation, 2002 WL 88278 (S.D.N.Y. 2002).

As set forth in Points I - IV, supra, Defendants cannot prevail on their motion under Rule 12(c). For the purposes of such a motion, the court must accept as true the allegations in the complaint that Defendants induced Plaintiff to waive her right to an administrative hearing without ever giving her notice that she had a right to such a hearing, or providing for any review by an impartial hearing officer to insure that Plaintiff's waiver was knowing and intelligent. As further alleged in the Complaint, Defendants did not provide Plaintiff with translation services during the conversations and proceedings that led to her uninformed waiver of hearing rights.

Defendants have failed to make a "strong showing" that Plaintiff's claims lack merit. To the contrary, Defendants appear not to have understood that Plaintiff's claims are squarely based on the Due Process clause as interpreted by the courts of this district. Although Defendants' conduct does indeed violate Executive Order 13166, and HHS regulations adopted pursuant to Title VI, Plaintiff need not demonstrate that she has a right of action based on such provisions, since her claims are based on the U.S. Constitution. Rivera v. Incorporated Village of Farmingdale, 2007 WL 3047089 (E.D.N.Y. 2007) (stay denied where "it is doubtful that action will be dismissed in its entirety"); Osan Limited v. Accenture LLP, 2006 WL 1662612 (E.D.N.Y. 2006) (court is "doubtful that defendants will succeed in dismissing the entire lawsuit.").

Plaintiff, moreover, seeks only a modest amount of discovery in this action – disclosure of the records that relate to her case, production of documents related to Defendants' hearing and translation procedures, and a very limited number of depositions. Such discovery cannot constitute a substantial burden on the Defendants. See, ADL, LLC v. Tirakian, 2007 WL 1988751 (E.D.N.Y. 2007) (defendant failed to prove it would be "unduly burdened"); Howard v. Galesi, 107 F.R.D. 348 (S.D.N.Y. 1985) (discovery requests "not burdensome or overreaching.").

Finally, the Defendants' belated request for a stay of discovery should be denied, based on a pattern of delay in this action. Defendants appeared in court on November 16, 2007 and agreed to a discovery schedule without mentioning the possibility of a Rule 12(c) motion. Nearly one month after the conference, and two weeks after Plaintiff served her discovery demands and Defendants' demands were due to have been served, State Defendant requested a stay of discovery pending the determination of a motion

under Rule 12(c). On December 11, 2007, the court waived the requirement for a pre-motion conference, and stated that Defendants should promptly file their 12(c) motions together with motions for a stay of discovery. Having allowed the discovery deadlines to lapse, defendants now move – weeks after the court's order – for a stay of discovery.

In short, Defendants have set forth no circumstances in this case that would not apply to any case in which a 12(c) motion had been filed. However, "had the Federal Rules contemplated that a motion to dismiss ... would stay discovery, they would contain such a provision." In re Chase Manhattan Corp. Securities Litigation, 1991 WL 79432 (S.D.N.Y. 1991). Since Defendants have alleged no particularized circumstances justifying a stay in this case, their application must be denied.

## CONCLUSION

For the reasons stated above, Defendants' motions to dismiss the action and for a stay of discovery should be denied.

Dated: New York, New York
    February 4, 2008

Respectfully submitted,

/s/ Nancy Bedard

JOHN C. GRAY, ESQ. (9872 JG)
SOUTH BROOKLYN LEGAL SERVICES
Nancy Bedard (1980 NB)
Sarah Dranoff (0870 SD)
Edward Josephson (7815 EJJ)
Attorneys for Plaintiff
105 Court Street
Brooklyn, N.Y. 11201
(718) 237-5500

29

LEGAL SERVICES FOR NEW YORK CITY
Raun Rasmussen (6036 RR)
Dimple Abichandani (8047 DA)
Amy Taylor (2056 AT)
Attorneys for Plaintiff
350 Broadway, 6th Floor
New York, N.Y.  10013
(212) 431-7200